**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOSEPH NELUMS, *on behalf of himself and others similarly situated*, | ) CASE NO. 1:22-cv-00739 ) ) JUDGE DAVID A. RUIZ ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| AMERICA'S LIFT CHAIRS, LLC, *et al.*, | ) **MEMORANDUM OPINION AND ORDER** ) ) ) |
| Defendants. | ) |

This matter is before the Court upon Defendant Prospects DM, Inc.'s (Defendant) Motion to Compel Arbitration and to Dismiss Plaintiff Joseph Nelums's Complaint (the Motion) (R. 20). For the following reasons, the Court GRANTS Defendant's Motion.

**I. Facts**

Plaintiff is an individual residing in New Mexico. (R. 35-1, PageID# 417). Defendant is an Ohio corporation with its principal place of business in California. (R. 1, PageID# 2 ¶ 7; R. 19, PageID# 95 ¶ 7). Plaintiff alleges that in April and May 2022, and despite never providing his prior written consent, Defendant placed three pre-recorded telemarketing calls to Plaintiff's personal phone number, soliciting Plaintiff to purchase America's Lift Chairs, LLC's (America's Lift Chairs) products. (R. 1, PageID# 5 ¶¶ 25–26). After receiving the first call on April 15, Plaintiff alleges that he sent a letter to America's Lift Chairs demanding that it stop calling him, but to no avail. (*Id.* ¶ 30).

## II. Procedural Background

Plaintiff's Complaint alleges that Defendant and America's Lift Chairs[1] violated the Telephone Consumer Protection Act (TCPA) for (i) making phone calls to Plaintiff and delivering pre-recorded messages, and (ii) placing such calls despite Plaintiff's phone number appearing on the National Do Not Call Registry. (*Id.*, PageID# 11–13 ¶¶ 59–68); 47 U.S.C. §§ 227(b), (c). In addition to his individual claims, Plaintiff raises the same causes of action on behalf of two putative nationwide classes: the Robocall Class and the National Do Not Call Registry Class. (*See* R. 1, PageID# 9 ¶ 46).

Defendant responded with the instant Motion moving the Court to compel arbitration of Plaintiff's TCPA claims and dismiss, or alternatively stay, the case. (R. 20, PageID# 137). In support of the Motion, Defendant filed two affidavits: one from Defendant's President Joshua Grant (R. 21) and the other from Ben Zitter, the Chief Compliance Officer of non-party What If Holdings, LLC (R. 22). Plaintiff filed an opposition to the Motion (R. 35), along with his own affidavit (R. 35-1). Defendant filed a subsequent reply. (R. 39).

During the Court's Case Management Conference with the parties, the Court deferred setting a case management schedule until the Court addressed the Motion. (R. 40).

## III. Standard of Review

In determining whether to grant a motion to dismiss or stay proceedings and compel arbitration, the Court must consider four factors:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the

---

[1] America's Lift Chairs was a former defendant in this action, but following a stipulation with Plaintiff, the Court granted its dismissal. (*See* R. 44; R. 45).

2

claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005), *cert. denied,* 546 U.S. 1214 (2006) (*quoting Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)); *see also Patnik v. Citicorp Bank Tr. FSB*, 412 F. Supp. 2d 753, 758 (N.D. Ohio 2005) (*citing Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)).

## IV. Discussion

Federal law strongly favors the enforcement of valid arbitration clauses for dispute resolution. The primary substantive provision of the Federal Arbitration Act (FAA) reflects "both a 'liberal federal policy favoring arbitration,' *Moses H. Cone* [*Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)], and the 'fundamental principle that arbitration is a matter of contract,' *Rent-A-Center, West, Inc. v. Jackson*, [561 U.S. 63, 67] (2010)." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). As a matter of contract law, then, the Act "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985)); *see also AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Garrett v. Hooters-Toledo*, 295 F. Supp. 2d 774, 778 (N.D. Ohio 2003).

The Supreme Court has instructed that, when deciding whether the parties agreed to arbitrate a matter, courts generally should apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The

3

Ohio Supreme Court has described the principles to be applied when considering the applicability of an arbitration clause, as follows:

> In *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648, the United States Supreme Court summarized four general principles, developed in prior decisions of that court, to be applied when considering the reach of an arbitration clause. The essence of these general principles, set out primarily in the "*Steelworkers* Trilogy" (*Steelworkers v. Am. Mfg. Co.* [1960], 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *Steelworkers v. Warrior & Gulf Navigation Co.* [1960], 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *Steelworkers v. Enterprise Wheel & Car Corp.* [1960], 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424) is pertinent to our review, and provides a framework for our inquiry.
>
> The first principle is that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration." *AT&T Technologies*, 475 U.S. at 648-649, 106 S.Ct. at 1418, 89 L.Ed.2d at 655, quoting *Warrior & Gulf, supra*, 363 U.S. at 582, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417.
>
> The second principle is that "the question of arbitrability – whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.*, 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656.
>
> The third rule is, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.*, 475 U.S. at 649, 106 S.Ct. at 1419, 89 L.Ed.2d at 656.
>
> The fourth principle is that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.*, 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656, quoting *Warrior & Gulf, supra*, 363 U.S. at 582-588, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417.

*Council of Smaller Enters. v. Gates, McDonald & Co.*, 687 N.E.2d 1352, 1355–56 (Ohio 1998).

In examining a motion to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-HAUL Co. of Mass. & Ohio, Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) (*quoting Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)).

In its Motion, Defendant contends that on October 20, 2021, Plaintiff visited a website with the name "The Free Samples Guide," which is owned and operated by non-party What If Holdings, LLC, and does business under the name "C4R Media Corp." (C4R Media). (R. 20, PageID# 119–120; R. 22, PageID# 189–190 ¶¶ 2, 6–7). After getting on the website, Defendant explains, Plaintiff expressed interest in the site's offer of free samples and accordingly agreed to the site's Terms and Conditions and Privacy Policy by entering his email address and pressing the "Continue" button, which was preceded by the following language: "By clicking the button below, I agree to the Terms and Conditions and Privacy Policy; and to receive daily email from TheFreeSamplesHelper, CouponCartDaily, and CouponXzibit, which I can unsubscribe from at any time; I am over 18." (R. 20, PageID# 119–120; R. 22, PageID# 190–191 ¶ 8). That language linked to the site's Terms and Conditions and Privacy Policy. (R. 20, PageID# 120–121; R. 22, PageID# 191–192 ¶ 9). The former contained a section titled "DISPUTE RESOLUTION PROVISIONS," which provided in relevant part:

> Should a dispute arise concerning the Website, Promotions, Content, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) the parties agree to submit their dispute for resolution by arbitration before a reputable arbitration organization as mutually agreed upon by the parties in New York, New York, in accordance with the then-current Commercial Arbitration rules of the American Arbitration Association; and (b) you agree to first commence a formal dispute proceeding by completing and submitting an Initial

Dispute Notice to us which can be found here.

(R. 22-2, PageID# 227, 235; R. 20, PageID# 121–122).

Defendant further explains that after pressing "Continue," Plaintiff advanced to a form submissions page that asked him to provide his personal information, including his name, address, date of birth, and telephone number. (R. 20, PageID# 120; R. 22, PageID# 192 ¶ 10). Defendant says that Plaintiff elected to provide this information and "consent[ed] to receive sales calls and/or text messages from an automatic telephone dialing system and/or prerecorded calls from C4R Media Corp or marketing partners." (R. 22, PageID# 192, 196–198 ¶¶ 10, 23; R. 22-3, PageID# 239–242; R. 20, PageID# 120). Defendant alleges that the website provided Plaintiff with a hyperlinked list of C4R Media's marketing partners, which included Health Insurer Quotes. (R. 22, PageID# 192 ¶ 10; R. 22-4, PageID# 244; R. 20, PageID# 120). Mr. Grant testified in his affidavit that Defendant called Plaintiff's phone number "solely based on the . . . lead from What If and relating to Health Insurer Quotes." (R. 21, PageID# 188 ¶ 5).

In his response to the Motion, Plaintiff disputes that he ever visited the website in question, much less agreed to the arbitration provision. (R. 35, PageID# 406–407).

Defendant argues the incorporation of the American Arbitration Association's (AAA) rules into the Terms and Conditions means that not only did Plaintiff agree to arbitrate his substantive TCPA claims, but that he also agreed to arbitrate the threshold question of arbitrability of his claims. (R. 20, PageID# 124–125). In relevant part, the AAA rules in effect at the time the parties allegedly entered into a contract provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or

to the arbitrability of any claim or counterclaim." (R. 20-1, PageID# 152, Rule R-7(a)).

As an initial matter, the Supreme Court has recognized that parties can agree to arbitrate "gateway" questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy, as long as there is "clear and unmistakable" evidence that they have agreed to do so. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 & n.1 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Such a provision is called a delegation clause. *See Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021). Under established Sixth Circuit law, an arbitration provision that incorporates the AAA rules provides clear and unmistakable evidence that the parties intended to delegate gateway questions of arbitrability to an arbitrator. *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021) (*citing Blanton v. Domino's Pizza Franch. LLC*, 962 F.3d 842, 846 (6th Cir. 2020)). Here, there is no dispute that the purported contract's arbitration provision incorporates the AAA rules, meaning that the agreement delegates the gateway question of arbitrability to an arbitrator.

Plaintiff's only arguments that the Court should not enforce the delegation clause are that he (i) never visited the website on which he purportedly agreed to the arbitration provision, and (ii) even if he did visit the website, Defendant is not a signatory or a non-signatory beneficiary of the purported contract, as the contract would have been between Plaintiff and the non-party website operator. (R. 35, PageID# 407–411, 413–414). In other words, Plaintiff argues that there was no valid contract between himself and Defendant, meaning that the case should not be subject to arbitration.

The applicable caselaw severely undercuts Plaintiff's position. The Supreme

7

Court and Sixth Circuit have clearly established that "[o]nly a *specific challenge* to a delegation clause brings arbitrability issues back within the court's province." *Swiger*, 989 F.3d at 505 (emphasis added) (*citing Rent-A-Center*, 561 U.S. at 72). While a party may attack a delegation clause using the same arguments it raises against the entire arbitration agreement, "merely challenging the entire agreement will not suffice." *Id.* at 506 (*citing Rent-A-Center*, 561 U.S. at 74). In other words, where a party merely challenges the entire contract or arbitration provision generally—not the delegation clause specifically—the question of the contract's validity is reserved for the arbitrator, not the Court.

Accordingly, courts in the Sixth Circuit have compelled arbitration in cases where a party has raised nearly identical arguments as Plaintiff—namely, that there was no valid contract because the opposing party was a non-signatory to the purported agreement. In these cases, the Sixth Circuit has held that such an argument is merely a general challenge to the contract as a whole, not specifically to the delegation clause. *See Becker v. Delek US Energy Inc.*, 39 F.4th 351, 356 (6th Cir. 2022) ("Whether a non-signatory can enforce a delegation clause is likewise a question of enforceability, not existence. Becker thus asks us to decide whether Delek, as a non-signatory to the agreement, can enforce the delegation clause. We can decide the question of whether the delegation clause is enforceable by a non-signatory only if Becker challenged the enforceability of that clause 'specifically.' . . . A party fails to make this showing if its challenge to the delegation clause simply recycles the same arguments that pertain to the enforceability of the agreement as a whole." (alternations omitted) (internal quotation marks omitted) (*quoting In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 886 (6th Cir.

8

2021))); *see also Cunningham v. Ford Motor Co.*, 2022 WL 2819115, at *5 (E.D. Mich. July 19, 2022) ("Just as in *Swiger*, the question of whether Ford, as a non-signatory to the Sales Contracts, may compel Tri-State and Weiss to arbitrate under the Arbitration Provisions of those contracts is a question of 'arbitrability' that has been delegated to the arbitrator under the Delegation Clause. The Court will therefore compel arbitration and allow the arbitrator to decide whether Ford may compel Tri-State and Weiss to arbitrate.").

Here, Plaintiff merely contests the existence of a valid contract because he arguably never entered into the contract and Defendant was a not a signatory or non-signatory beneficiary of the purported agreement. Since Plaintiff merely challenges the general existence of the contract, not the delegation clause specifically, the Court must compel arbitration on the gateway question of arbitrability.

The only remaining issue is whether the Court should dismiss this case, as Defendant requests, or enter a stay of the action after it compels arbitration. (R. 20, PageID# 136–137). The FAA provides that the Court, "upon being satisfied that the issue involved in such a suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Sixth Circuit has reasoned that a district court should ordinarily stay an action after it compels arbitration, but a court may dismiss the case where neither party asks for a stay. *See Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 942 (6th Cir. 2021). Here, Plaintiff has not requested a stay in the event that the Court compels arbitration, so the Court elects to dismiss the action in its entirety.

## V. Conclusion

Defendant's Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint (R. 20) is GRANTED.

IT IS SO ORDERED.

                                                      s/ *David A. Ruiz*
                                                      David A. Ruiz
                                                      United States District Judge

Date: September 21, 2023